UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNAE L. SANDERS,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

        Defendants.
_____/

Case No. 10-CV-15041

HONORABLE AVERN COHN

## MEMORANDUM AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 32)

### I. Introduction

This is an employment discrimination case. Plaintiff Annae Sanders ("Sanders") is employed as an assistant deputy warden with the Michigan Department of Corrections ("MDOC"). Sanders worked at the Robert Scott Correctional Facility ("RSCF") until 2004, at which time she began working at the Mound Correctional Facility ("MCF"). Sanders brings suit against Heidi Washington, RSCF's warden; Bruce Curtis, the MDOC's regional prison administrator; Chris Crysler, an acting deputy at RSCF; Darryl Steward, a deputy warden at MCF; and Gary Manns, a deputy director at the MDOC. Sanders claims race and gender discrimination and retaliation under state and federal law against the aforementioned defendants in their individual capacities. In her complaint, Sanders claims Count (I) Violation of the Michigan Elliot-Larsen Civil Rights Act - Disparate Treatment; Count (II) Violation of the Michigan Elliot-Larsen Civil Rights

Act - Hostile Work Environment; Count (III) Violation of the Michigan Elliot-Larsen Civil Rights Act - Retaliation; Count (IV) Violation of the Fourteenth Amendment - Equal Protection; and Count (V) Gross Negligence. Now before the Court is the defendants' motion for summary judgment (Doc. 32). Sanders filed a response (Doc. 37). The defendants filed a reply (Doc. 41). For the reasons that follow, the defendants' motion is GRANTED.

## II. Background

Sanders, an African-American female, is employed by the MDOC. On January 13, 2009, Sanders notified Defendant Heidi Washington ("Washington") that she believed that Jodi DeAngelo ("DeAngelo"), an MDOC employee, had falsified time and attendance records. An MDOC employee's failure to report a fellow employee's work rule violation is itself a violation. Human resource officer John McCoskey ("McCoskey") was interviewed in an internal affairs investigation regarding the matter. During the investigation, DeAngelo said that Sanders was just attempting to get her in trouble. Sanders says that the investigation turned on her. Ultimately, internal affairs concluded that there was insufficient evidence to support the claim that DeAngelo had falsified records, as well as insufficient evidence to support DeAngelo's claim that Sanders had tried to set her up. In March 2009, Defendant Gary Manns ("Manns") signed off on a case review form, which closed the investigation file after these findings. Sanders says that DeAngelo was not placed on stop order.[1]

In March 2009, Sanders applied for promotion to the position of deputy warden at

---

[1] A stop order is leave mandated by the employer to ensure that the subject of the stop order does not interfere with an ongoing investigation.

the Women's Huron Valley Facility.  Job candidates for MDOC positions submit applications, and all candidates are screened so that only those who meet minimum civil service requirements for the positions qualify for interviews.  Thus, everyone who interviews for an MDOC position is qualified to hold that position.  The interviews are conducted by a three or four person interview panel. Candidates are then ranked, and the top-ranked candidate is offered the position. Sanders was ultimately denied the promotion; the positions were offered to two other employees.  Defendant Bruce Curtis ("Curtis") sat on the interview panel.  Sanders was ranked 15th among the candidates.

In April 2009, DeAngelo was appointed by Michigan Governor Granholm to a position on the parole board.  Sanders applied for, but did not receive, appointment to the parole board.

On May 15, 2009, Sanders filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against MDOC alleging discrimination, dating back to July 2008.  Sanders says that on May 27, 2009, Joan Bridgford, an MDOC employee, notified Washington and McCoskey that Sanders had filed the complaint.

In November 2009, Sanders was the subject of an internal investigation regarding her knowledge of the use of a "sanction cup" by staff under her supervision. Curtis presided over Sanders' disciplinary conference on the matter and found insufficient evidence to support the finding of any work rule violations.  Accordingly, Sanders did not receive any discipline in connection with the matter.

In March 2010, Sanders was the subject of a second internal investigation relating to charges that she had improperly awarded overtime to a corrections officer and interfered with an MDOC internal investigation. Sanders was placed on a paid six-

3

month stop order while the investigation was pending. Sanders says that the stop order made her fear that her employment would be terminated. Curtis drafted a report indicating that Sanders had violated six work rules. Curtis thought that his findings warranted termination of Sanders' employment. Curtis presided over the disciplinary conference. Sanders was ultimately found to have violated two work rules and issued a five-day suspension.

In July 2010, Sanders was the subject of a third internal investigation relating to charges that she had mistreated a grievance coordinator. Manns signed off on the internal affairs investigation. Curtis presided over the disciplinary conference and found insufficient evidence to support the work rule violation charges. Accordingly, Sanders was not disciplined in connection with the matter.

In June 2010, Sanders applied for and was denied promotions to the position of deputy warden at the Brooks and Crane Correctional Facilities. None of the defendants participated in the decision not to promote Sanders. Sanders says, however, that Curtis and Manns participated in disciplinary actions brought against her, and that such disciplinary actions were placed in her personnel file and accessed by the interview panel.

In January 2011, Sanders applied for and was denied promotions to the position of warden at the Adrian, Baraga, Woodland, and Macomb Correctional Facilities. Curtis sat on the interview panel. Sanders says that Curtis, by considering the disciplinary actions in Sanders' personnel file, used criteria outside of the specified selection criteria to rank the candidates.

In 2011, Sanders applied for and was denied promotion to the position of deputy

warden at the Women's Huron Valley Facility. The positions were ultimately offered to DeAngelo and another employee. Curtis sat on the interview panel. Sanders says that Curtis again considered the disciplinary actions in Sanders' personnel file.

### III. Standard of Review

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement

to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

## IV.  Discussion

### A. Violation of the Michigan Elliot-Larsen Civil Rights Act

#### 1.  Disparate Treatment

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Curry v. SBC Commc'ns, Inc., 669 F.Supp.2d 805, 824 (E.D. Mich. 2009) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000)). To establish intentional discrimination, a plaintiff must demonstrate direct evidence of discrimination or indirect evidence of discrimination by presenting sufficient circumstantial evidence to allow an inference of discrimination. Id.

Direct evidence does not require the fact-finder to draw any inferences. Id. at 825 (quoting In re Rodriguez, 487 F.3d 1001, 1007 (6th Cir. 2007)). "Evidence of discrimination is not considered direct evidence unless [an improper] motivation is

6

explicitly expressed." Amini v. Oberlin College, 440 F.3d 350, 359 (6th Cir. 2006). Here, Sanders has not presented any direct evidence of discrimination.

Even without direct evidence, Sanders can prevail if she can establish an inferential case of discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Curry, 669 F.Supp.2d at 824-25. Under McDonnell Douglas, as clarified by Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981), Sanders must first prove a prima facie case of discrimination. Burdine, 450 U.S. at 252-53; Kline v. Tenn. Valley Auth., 128 F.3d 337, 342 (6th Cir. 1998).

A plaintiff establishes a *prima facie* case of discrimination by demonstrating that (1) she is a member of a protected group, (2) she was subject to an adverse employment decision, (3) she was qualified for the position, and (4) she was treated differently than similarly situated employees. Chambers v. City of Detroit, 786 F.Supp.2d 1253, 1263 (E.D. Mich. 2011) (citing Russell v. Univ. of Toledo, 537 F.3d 596, 604 (6th Cir. 2008)).

Sanders alleges that she was discriminated against because her race and gender in violation of the Elliot-Larsen Civil Rights Act ("ELCRA"). She says that the defendants discriminated against her by declining to promote her, investigating her for alleged work rule violations, and placing her on a stop order. (Compl. ¶59)

### a. Promotions

In her amended complaint, Sanders alleges that she applied for and was denied five separate promotions.[2] All qualified candidates who apply for a given position are

---

[2] In her response to the defendants motion for summary judgment, Sanders says that there was a sixth promotion for which she was passed over. The interview for that

interviewed for that position. The interviews are conducted by a three or four person panel. The panel ranks the candidates, and offers the position to the candidate with the highest ranking.

Curtis was the only defendant involved in the promotion process. (Sanders Dep. pg. 79-83) Curtis sat on the panel for three of the five positions for which Sanders applied: March 2009 for deputy warden, January 2011 for senior executive warden, and February 2011 for deputy warden. The positions were offered to candidates who the panel ranked as the best. Thus, Sanders cannot show that any defendant discriminated against her by not offering her promotions.

Further, Sanders would have to show that she was treated differently than a similarly situated employee. See Chambers, 786 F.Supp.2d at 1263. Sanders contends that DeAngelo is similarly situated. Similarly situated, however, "means that all relevant aspects of their employment need to be nearly identical." Bromley v. Parisian, Inc., 55 F.App'x 232, 240 (6th Cir. 2002) (citing Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir.1994). Sanders concedes that at the time of the interview for the deputy warden position that was ultimately offered to DeAngelo, Sanders' personnel file had the disciplinary sanctions listed. Sanders has offered no evidence that DeAngelo's personnel file contained any disciplinary sanctions. As such, DeAngelo was not a similarly situated employee. See id. (finding that an inference of discrimination could not be drawn from the fact that two employees were treated differently where the employees had different performance histories). Because Sanders

---

promotion, however, occurred in November 2011, several months after Sanders filed her amended complaint.

has failed to establish a *prima facie* case of discrimination, her racial discrimination claims must fail.

Even assuming that Sanders could make out a prima facie case of discrimination, she is not necessarily entitled to a trial. After a plaintiff makes out a *prima facie* case, the burden shifts to the defendants to articulate a "legitimate, nondiscriminatory reason" for the adverse action. Burdine, 450 U.S. at 252-53. The defendants say that Sanders was not promoted because she was under a disciplinary sanction. Sanders concedes that the defendants have met this burden. See Pl.'s Resp. Br. pg. 20 ("Given that Defendants have asserted a legitimate nondiscriminatory reason . . . .").

Sanders would still be able to defeat the defendants' motion for summary judgment on the discrimination claims if she could demonstrate that the defendants' stated reason for not promoting her is merely pretext. Burdine, 450 U.S. at 256. To establish pretext, a plaintiff may show "that the proffered reason '(1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action.'" Sybrandt v. Home Depot, U.S.A., Inc., 560 F.3d 553, 558 (6th Cir. 2009) (quoting Ladd v. Grand Trunk W. R.R., Inc., 552 F.3d 495, 502 (6th Cir. 2009)).

Sanders essentially concedes that the defendants' articulated reason for not promoting her is what actually motivated them to not promote her. "Plaintiff contends that [defendant] Curtis used criteria outside of the specified selection criteria to rank the candidates. More specifically [defendant] Curtis considered and relied on the Plaintiff's disciplinary actions that were placed in her personnel file." (Pl.'s Resp. Br. pg. 15)

9

Even assuming that it was improper for Curtis to use Sanders' disciplinary record as a factor in his rankings, doing so did not constitute racial discrimination.

### b. Investigations

As an element of her *prima facie* case, Sanders has to show that she was subject to an adverse employment decision. See Chambers, 786 F.Supp.2d at 1263. Sanders alleges that the defendants discriminated against her by investigating her for alleged work rule violations. However, "[t]he act of investigating possible employee misconduct is not an adverse action." Kuhn v. Washtenaw Cnty., 2012 WL 12299890 at *7 (E.D. Mich. April 12, 2012) (citing Dendinger v. Ohio, 207 F.App'x 521, 527 (6th Cir. 2006)).

Further, pursuant to MDOC's disciplinary procedure, when a complaint is initiated against an employee, the complaint is sent to Internal Affairs ("IA") for an investigation to determine whether the charges are substantiated. If IA substantiates the charge, a report is sent to the head of IA. If the head of IA signs-off on the report, the report is sent to the deputy director. If the deputy director signs-off on the report, it is then sent to the director of the MDOC. If the director of the MDOC signs-off, the matter is set for a disciplinary conference at which the accused is represented by a union representative. The chair of the disciplinary conference determines whether the investigation was fair and whether there are any mitigating circumstances to defeat or lessen the charge. The matter is then sent to labor relations, and labor relations makes the ultimate decision of what, if any, discipline to impose.

The only defendants involved in the investigative process were Manns and Curtis. Manns, as the deputy director, did not initiate any investigations or determine

Sanders' culpability. He received a signed report from the head of IA, made sure it was clear and consistent, and then signed the report and sent it on to the director of the MDOC. Curtis was the chair of Sanders' disciplinary conferences. Curtis found sufficient evidence in the IA investigative report to substantiate charges in only one of the three investigations of which he was the chair. Pursuant to MDOC's disciplinary procedure, that investigation was forwarded to labor relations who imposed a 5-day suspension, which was ultimately reduced to a one-day suspension. Neither Manns nor Curtis had enough involvement or authority in the disciplinary process to be held liable for disciplinary actions taken against Sanders.

### c. Stop Order

Sanders alleges the defendants discriminated against her by placing her on a paid six-month stop order. First, Curtis was the only defendant involved in the decision to place Sanders on a stop order. Second, Sanders was placed on the stop order pursuant to the MDOC's policy directives. MDOC policy directive 02.03.100 Section N.1. provides for mandatory suspension when an employee is being investigated for a work rule violation that affects the order and security of the work site. The directive does not offer guidance regarding which work rule violations would fall in this category, apparently leaving the decision to the employer's discretion. Additionally, policy directive 02.03.100 Section O.3. provides for permissive suspension where the work rule violation is for conduct, if found to be true, would likely result in the employee being discharged. Had all of the allegations against Sanders been substantiated, she would likely have been terminated. Thus, the stop order was not inappropriate and did not constitute discrimination.

### 2. Hostile Work Environment

To establish a prima facie case of a racially hostile work environment, Sanders must establish that (1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on race, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendants knew or should have known about the harassment and failed to act. Quinto v. Cross and Peters Co., 451 Mich. 358, 368-69 (1996).

The conduct that Sanders says created a racially hostile work environment is the same conduct that Sanders says demonstrated disparate treatment. As per the discussion above, Sanders has failed to establish that her race was the reason for the alleged harassment. Accordingly, Sanders' racially hostile work environment claim fails. See Shepherd v. Gen. Motors Corp., 2005 WL 1750626 (Mich.App. July 26, 2005) (affirming summary disposition on the plaintiff's hostile work environment claim because the plaintiff failed to demonstrate that, but for the feature putting her in a protected group, she would not have suffered the harassment) (citing Radtke v. Everett, 442 Mich. 368, 383 (1993)).

### 3. Retaliation

To establish a prima facie case of retaliation under ELCRA, Sanders must demonstrate by a preponderance of evidence that (1) Sanders engaged in protected activity, (2) the defendants knew Sanders engaged in the protected activity, (3) the defendants subsequently took an employment action adverse to Sanders, and (4) a

causal connection between the protected activity and adverse employment action exists. Garg v. Macomb Cnty. Comm. Mental Health Servs., 472 Mich. 263, 273 (2005).

"In order to engage in a protected activity, a plaintiff must make an overt stand against suspected illegal discriminatory action." Lockett v. March USA, Inc., 354 F.App'x 984, 997 (6th Cir. 2009)[3] (internal citations and quotations omitted). Sanders says she was retaliated against for reporting work rule violations and because of her race and gender. (Dep. of Annae Sanders, pg. 96) Because reporting work rule violations is not an overt stand against illegal discriminatory action, it is not considered protected activity. See Lockett, 354 F.App'x at 997; see also M.C.L. 37.2701(a) (stating that a person shall not retaliate against someone for opposing a violation of the ELCRA or for charging, filing a complaint, testifying, assisting, or participating in an investigation, proceeding, or hearing under the ELCRA). Accordingly, Sanders has failed to establish a prima facie case of retaliation because she cannot show that she engaged in protected activity.

Moreover, even assuming that Sanders retaliation claim is based upon her filing a complaint with the Michigan Department of Civil Rights ("MDCR")[4], which is considered protective activity under ELCRA, she has failed to present any evidence that any of the defendants knew of the complaint. Sanders says that on May 27, 2009, Joan

---

[3] The Sixth Circuit analysis in Lockett is based on Ohio law. The elements of a *prima facie* case of retaliation, however, are the same under Ohio law as they are under Michigan law. See Lockett, 354 F.App'x at 997.

[4] Sanders' second amended complaint alleges that she was retaliated against for complaining about discriminatory policies and/or patterns or practice. (Second Am. Compl. ¶75)

Bridgford, an MDOC employee, notified Washington and McCoskey that Sanders had filed the complaint. Sanders, however, has not offered any evidence to support this assertion.

Additionally, Sanders cannot establish a causal connection between the protected activity and adverse employment action. Sanders says that the casual connection is shown by the fact that less than two months after filing the complaint with the MDCR, Sanders was placed on the sixth-month stop order. (Pl.'s Reply Br. pg. 26) Unless the employer retaliates almost immediately upon learning of the protected activity, temporal proximity, unless coupled with other indicia of retaliatory conduct, is insufficient to find a causal connection. Mickey v. Zeidler Tool and Die Co., 516 F.3d 516, 525 (6th Cir. 2008). Accordingly, Sanders has failed to establish a prima facie case of retaliation.[5]

### B. Violation of the Fourteenth Amendment - Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment 'is essentially a direction that all persons similarly situated should be treated alike.'" Dubay v. Wells, 506 F.3d 422, 428 (6th Cir. 2007) (quoting City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985)). The Sixth Circuit has held that the "threshold element of an equal protection claim is disparate treatment . . . ." Center for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 379 (6th Cir. 2011) (quoting Scarbrough v. Morgan Cnty.

---

[5] Even if Sanders could make out a *prima facie* case of retaliation, she would not be entitled to a trial on the issue. A retaliation claim is analyzed under the same burden-shifting analysis as a discrimination claim. See Lewis v. Quaker Chemical Corp., 229 F.3d 1152, at *7 (6th Cir. 2000). As discussed above, Sanders cannot establish that the defendants' articulated reason for the adverse employment action was merely pretext.

Bd. of Educ., 470 F.3d 250, 260 (6th Cir.2006)). As discussed in part IV.A.1., *supra*, Sanders has failed to demonstrate disparate treatment. Accordingly, Sanders' equal protection claim fails.

### C. Gross Negligence

The defendants say that they are governmentally immune from Sanders' gross negligence claim. The relevant statute, MCL 691.1407(2), sets forth the standard for governmental immunity pertaining to individual actors and employees of governmental agencies. The statute provides immunity if (a) the officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority; (b) the governmental agency is engaged in the exercise or discharge of a governmental function; and (c) the officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

It is undisputed that the MDOC is engaged in the exercise or discharge of a governmental function. Sanders says the defendants were not acting within the scope of their employment because their actions were discriminatory.[6] The decisions to investigate Sanders for alleged work rule violations and to not give her promotions, however, are within the scope of the defendants' authority. Moreover, such decisions do not constitute "conduct so reckless as to demonstrate a substantial lack of concern

---

[6] Sanders argument is that the defendants performed the actions in a discriminatory manner, not that the actions were beyond the scope of the defendants' employment. Further, the actions Sanders complains about (investigating Sanders for alleged work rule violations, not giving her promotions, and placing her on a stop order) are the same actions that form the basis of her disparate treatment claim. Thus, her gross negligence claim fails for the same reasons her disparate treatment claim fails.

for whether an injury results." M.C.L. 691.1407(7)(a). Thus, the defendants are governmentally immune from liability for the conduct Sanders says is gross negligence.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

SO ORDERED.

       S/Avern Cohn
       AVERN COHN
       UNITED STATES DISTRICT JUDGE

Dated:  July 31, 2012

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 31, 2012, by electronic and/or ordinary mail.

       S/Julie Owens
       Case Manager, (313) 234-5160